[No. G042377. Fourth Dist., Div. Three. July 23, 2010.]

EVELYN RIVERA et al., Plaintiffs and Respondents, v.
FIRST DATABANK, INC., Defendant and Appellant.

710

**COUNSEL**

Davis Wright Tremaine, Thomas R. Burke, Rochelle L. Wilcox, Jeffrey Glasser; Jonathan R. Donnellan and Kristina E. Findikyan for Defendant and Appellant.

Law Office of Donald J. Farber, Donald J. Farber; Law Office of Lloyd Kirschbaum and Lloyd Kirschbaum for Plaintiffs and Respondents.

OPINION

RYLAARSDAM, Acting P. J.—Defendant First DataBank, Inc., appeals from denial of its special motion to strike the negligence and breach of contract causes of action in the complaint filed by plaintiffs Evelyn Rivera, Beau Rivera, Steven Rivera, Jenna Rivera, and Corryn Rivera. (Anti-SLAPP—strategic lawsuit against public participation—motion; Code Civ. Proc., § 425.16; all further references are to this code unless otherwise stated.) It contends the court erred when it concluded the conduct for which defendant is being sued did not arise from the exercise of free speech and was also barred by section 425.17. We agree and also determine plaintiffs have not shown a probability of prevailing on their complaint against defendant. We therefore reverse the order.

Defendant requests that we take judicial notice of the legislative history of section 425.17. It is unnecessary to our decision and we deny the request.

FACTS AND PROCEDURAL HISTORY

Defendant is an independent publisher of "medication databases" available to anyone interested, including consumers, drug manufacturers, health insurance companies, government agencies, and pharmacies. Defendant's business includes the "specialty area of publishing patient medication information" contained in several thousand pamphlets, referred to by defendant as "[m]onographs," for almost 100,000 drugs approved by the Food and Drug Administration (FDA). The monographs synthesize information contained in manufacturers' patient medication guides and medication package inserts directed at physicians into "a concise document written in everyday language a consumer would understand." The monographs are directed toward consumers and the general public and are to be provided in addition to the manufacturer's patient medication guides and package inserts. One of the monographs defendant published was for the antidepressant drug Paxil.

Plaintiffs alleged in the complaint that 50-year-old Bruce Rivera was prescribed Paxil for his stress. He filled the prescription at one of defendant Costco's pharmacies. Shortly after he began to use the medication he committed suicide. In addition to suing Mr. Rivera's physician for medical malpractice and Costco for negligence, plaintiffs sued defendant for negligence and breach of contract. Plaintiffs alleged defendant sold monographs to defendant Costco with the intent they be provided to Costco customers, including Mr. Rivera.

They pleaded defendant was negligent in preparing the Paxil monograph given to Mr. Rivera, claiming it should have included the so-called black-box suicide warning issued by the FDA. They alleged the monograph was confusing and misleading based on "its heading and formats," with the suicide warnings it did contain "buried . . . in the fine print." Finally, plaintiffs claimed that certain phrases in the monograph, i.e., "before taking paroxetine [the Paxil generic], tell your doctor or pharmacist if you are allergic to it" and "before using this medication, tell your doctor or pharmacist your medical history," were additionally confusing, "creat[ing] in [decedent's and Evelyn Rivera's] minds vagueness and uncertainty [i]n the entire document."

In the contract cause of action plaintiffs pleaded they were third party beneficiaries under Civil Code section 1559 of a contract whereby defendant furnished Costco with the monograph. Defendant breached the contract by "provid[ing] an inaccurate and confusing" Paxil monograph.

Defendant filed an anti-SLAPP motion, arguing the monograph was protected speech. In denying the motion, the court ruled "the gravamen of the causes of action against [defendant] is for wrongful death," which "do[es] not arise out of free speech in connection with a public issue." It also held defendant's motion was barred by the exception to section 425.16 set out in section 425.17, subdivision (c).

## DISCUSSION

### 1. *Introduction*

■ Section 425.16, subdivision (b)(1) provides a party may bring a special motion to strike any "cause of action against [that party] arising from any act [the party commits] in furtherance of the . . . right of petition or free speech under the United States or California Constitution in connection with a public issue . . . ." An " 'act in furtherance of a person's right of . . . free speech under the United States or California Constitution in connection with a public issue' includes: . . . any . . . conduct in furtherance of the exercise of the constitutional right of . . . free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

The court must engage in a two-step analysis under this section. First it has to determine whether the defendant has met its burden to show " 'that the challenged cause of action is one arising from protected activity.' " (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 733 [3 Cal.Rptr.3d 636,

74 P.3d 737].) If so, the burden shifts to the plaintiffs to show the likelihood of prevailing on the claim. (*Ibid.*) " 'We consider "the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based." [Citation.] However, we neither "weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." [Citation.]' [Citations.]" (*Nygård, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1036 [72 Cal.Rptr.3d 210].) The intent of the statute is to prevent "chill[ing] the valid exercise of . . . freedom of speech and petition . . . through abuse of the judicial process" and to that "end, th[e] section [is to] be construed broadly." (§ 425.16, subd. (a).) We review an order denying an anti-SLAPP motion de novo. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325–326 [46 Cal.Rptr.3d 606, 139 P.3d 2].)

## 2. *Protected Speech*

Defendant contends the court erred in finding publication of the monograph was not "free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).) It asserts it sufficiently met its burden to satisfy the elements of the statute, and we agree.

■ Defendant must show the complaint arises from its exercise of free speech (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685]), that is, the "act underlying the . . . cause of action must itself have been an act in furtherance of the right of . . . free speech." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 [124 Cal.Rptr.2d 519, 52 P.3d 695], italics omitted.) To determine whether defendant has met its burden we must look at the "gravamen of the lawsuit." (*Kronemyer v. Internet Movie Database, Inc.* (2007) 150 Cal.App.4th 941, 947 [59 Cal.Rptr.3d 48].) Here, the act on which the complaint against defendant is based is the confusing language and format of the monograph, in other words, publication. There are no allegations against defendant except this exercise of free speech.

"The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92 [124 Cal.Rptr.2d 530, 52 P.3d 703].) The "court must . . . focus on the substance of the plaintiff's lawsuit" (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 669–670 [35 Cal.Rptr.3d 31]) and determine "whether the plaintiff's cause of action itself was *based on* an

act in furtherance of the defendant's right of petition or free speech [citations]" (*City of Cotati v. Cashman, supra,* 29 Cal.4th at p. 78). "Thus, we do not evaluate the first prong of the anti-SLAPP test solely through the lens of a plaintiff's cause of action." (*Stewart v. Rolling Stone LLC* (2010) 181 Cal.App.4th 664, 679 [105 Cal.Rptr.3d 98].) As plaintiffs themselves affirmatively declare in the respondents' brief, defendant "is being sued exclusively because of the contents of its Paxil monograph." Thus the free speech factor is satisfied.

■  Defendant has also shown the contents of the monograph fall within the statute. We construe the term "issue of public interest" broadly. (*Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 23 [53 Cal.Rptr.3d 752].) "A statement or other conduct is made 'in connection with a public issue or an issue of public interest' (§ 425.16, subd. (e)(4)) 'if the statement or conduct concerns a topic of widespread public interest and contributes in some manner to a public discussion of the topic.' [Citation.]" (*Stewart v. Rolling Stone LLC, supra,* 181 Cal.App.4th at p. 677.) " '[A]n issue of public interest' within the meaning of section 425.16, subdivision (e)(3) [and by virtue of identical language, subdivision (e)(4),] is *any issue in which the public is interested.*" (*Nygård, Inc. v. Uusi-Kerttula, supra,* 159 Cal.App.4th at p. 1042.)

Factors that have been delineated to show "an issue of public interest" include the following: " 'a matter of public interest should be something of concern to a substantial number of people. [Citation.] Thus, a matter of concern to the speaker and a relatively small, specific audience is not a matter of public interest. [Citation.] . . . [T]here should be some degree of closeness between the challenged statements and the asserted public interest [citation]; the assertion of a broad and amorphous public interest is not sufficient [citation]. . . . [T]he focus of the speaker's conduct should be the public interest . . . .' " (*Terry v. Davis Community Church* (2005) 131 Cal.App.4th 1534, 1546–1547 [33 Cal.Rptr.3d 145].) Nevertheless, it may encompass activity between private people. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1116 [81 Cal.Rptr.2d 471, 969 P.2d 564].)

■  Treatment for depression is a matter of public interest. In *Nagel v. Twin Laboratories, Inc.* (2003) 109 Cal.App.4th 39 [134 Cal.Rptr.2d 420] the court stated that "matters of health . . . are undeniably of interest to the public . . . ." (*Id.* at p. 47.) Likewise *DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562 [92 Cal.Rptr.2d 755] instructed that the "equivalence of Coumadin and its generic counterpart pertain[] to 'a public issue or an issue of public interest.' " (*Id.* at p. 567; see also *Vess v. Ciba-Geigy Corp.*

*USA* (9th Cir. 2003) 317 F.3d 1097, 1110 [in anti-SLAPP case statements as to use of Ritalin for and diagnosis and treatment of attention deficit disorder in children were of interest to public]; *United Medical Laboratories, Inc. v. Columbia Broadcasting System, Inc.* (9th Cir. 1968) 404 F.2d 706, 711 [in defamation action for statements made in media about accuracy of lab tests, public health issues found to be "area of public interest"].)

The discussions in which the parties engage about whether defendant is a publisher are not dispositive of or relevant to our decision. Nor do we need to determine if the contents of the monograph were published in a public forum. (§ 425.16, subd. (e)(3).) Defendant's speech is protected under section 425.16, subdivision (e)(4).

### 3.   *Section 425.17*

■   Section 425.17, subdivision (c) does not bar the anti-SLAPP motion. The statute was enacted due to "a disturbing abuse of [s]ection 425.16 . . . which has undermined the exercise of the constitutional rights of freedom of speech and petition for the redress of grievances, contrary to the purpose and intent of [s]ection 425.16," and the Legislature sought to eliminate the "chill[ing]" effect of "abuse of the judicial process or [s]ection 425.16." (§ 425.17, subd. (a).) Nevertheless, section 425.17 is to be narrowly construed. (*Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 319 [86 Cal.Rptr.3d 288, 196 P.3d 1094].)

Section 425.17, subdivision (c) provides: "Section 425.16 does not apply to any cause of action brought against a person primarily engaged in the business of selling . . . goods . . . arising from any statement or conduct by that person if both of the following conditions exist: [¶] (1) The statement or conduct consists of representations of fact about that person's or a business competitor's business operations . . . or services, that is made for the purpose of obtaining approval for, promoting, or securing sales . . . of . . . the person's goods or services, or the statement . . . was made in the course of delivering the person's goods or services. [¶] (2) The intended audience is an actual or potential buyer or customer . . . ."

■   Plaintiffs have the burden to demonstrate the anti-SLAPP motion is exempt under section 425.17. (*Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 22–23, 25–26 [109 Cal.Rptr.3d 329, 230 P.3d 1117].) To do so they must show the following: "(1) the cause of action is against a person primarily engaged in the business of selling or leasing goods or services; (2) the cause of action arises from a statement or conduct by that person consisting of representations of fact about that person's or a business competitor's business operations, goods, or services; (3) the statement or

conduct was made either for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services or in the course of delivering the person's goods or services; and (4) the intended audience for the statement or conduct meets the definition set forth in section 425.17(c)(2)" (*id.* at p. 30), that is, "an actual or potential buyer or customer" (§ 425.17, subd. (c)(2)).

Plaintiffs have not satisfied all of these elements. The statements in the monograph are about neither defendant's business nor plaintiffs'; the monograph discusses Paxil, the product of a drug manufacturer. In addition, the statements were not made to sell defendant's services or goods. Plaintiffs' argument the complaint alleged defendant was an agent of Costco, the purveyor of Paxil, does not persuade. Costco does not manufacture Paxil and nothing in the monograph discusses Costco's pharmacy business. Further, plaintiffs presented no evidence to support this claim and a mere allegation does not suffice. (See *Nagel v. Twin Laboratories, Inc., supra,* 109 Cal.App.4th at p. 45; see also § 425.16, subd. (b)(2).)

Plaintiffs propose a different construction of the statute, focusing on the last clause of section 425.17, subdivision (c)(1), which provides "the statement . . . was made in the course of delivering the person's goods or services." They argue that the language makes the section applicable to any statement by anyone made while delivering any person's goods. But in *Simpson Strong-Tie Co., Inc. v. Gore, supra,* 49 Cal.4th 12, the Supreme Court considered and unequivocally rejected this interpretation of the statute. (*Id.* at pp. 27–30.) Section 425.17 does not apply.

### 4. *Probability of Success on the Merits*

■ To show a probability of success on the merits of the action, plaintiffs " ' " 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' " [Citation.] . . . [Plaintiffs] cannot rely on the allegations of the complaint, but must produce evidence that would be admissible at trial. [Citation.]' [Citation.]" (*Nguyen-Lam v. Cao* (2009) 171 Cal.App.4th 858, 866–867 [90 Cal.Rptr.3d 205].)

Plaintiffs sued defendant on two theories, negligence and breach of contract. In the negligence cause of action, plaintiffs complained of the format of the monograph, primarily because the suicide warning was "buried . . . in the fine print." They also criticized language telling Mr. Rivera to consult his physician or pharmacist, claiming it made them uncertain about the entire document. The breach of contract claim is based on a similar assertion that

defendant's monograph was "inaccurate and confusing"; plaintiffs allege they can recover as third party beneficiaries of defendant's contract with Costco.

The evidence plaintiffs presented to support their causes of action was contained in two declarations their lawyer had filed in support of motions to file the second and third amended complaints and the declarations of plaintiff Evelyn Rivera and James O'Donnell, a pharmacology expert, filed in opposition to Costco's motion for summary judgment, all of which were considered after the trial court took judicial notice of them. But none of these is sufficient to show plaintiffs will likely prevail at trial.

Plaintiffs failed to demonstrate defendant owed them any duty. Defendant is neither the manufacturer of Paxil, which had the duty to publish the patient medication guide containing the appropriate suicide warnings in the language and form required by the FDA, including the so-called black box warning, nor the pharmacy dispensing it. Plaintiffs did not show defendant was obligated to provide any information to them at all. Rather, as supported by defendant's evidence, the monograph was not required and was intended to be a supplement to the manufacturer's patient medication guide and package insert. The first sentence of the monograph states: "IMPORTANT NOTE: This is a summary and does not contain all possible information about this product. For complete information about this product or your specific health needs, ask your health care professional." About 25 percent of the way into the monograph it states: "HOW TO USE: Read the medication guide provided by your pharmacist before you start using paroxetine and each time you get a refill. If you have any questions regarding the information, consult your doctor or pharmacist."

Plaintiffs allege that defendant's monograph "failed to reflect the FDA's determination months earlier when [it] issued a 'black box' suicide warning on Paxil/paroxetine, the highest form of regulatory warning for patients." But this does not make out a prima facie case for negligence. First, plaintiffs supply no evidence to support the allegation. (*Nagel v. Twin Laboratories, Inc., supra*, 109 Cal.App.4th at p. 45 ["The plaintiff cannot rely on the allegations of the complaint alone, but must present admissible evidence."]; see § 425.16, subd. (b)(2).) Second, as shown in the FDA-approved patient medication guide supplied by defendant in support of the motion, the black box warning required at the time Mr. Rivera obtained his prescription dealt with potential suicide only in children and adolescents. And plaintiffs acknowledge this in their brief. The FDA did not change the requirement to add young adults to the black box suicide warning until over a year after Mr. Rivera obtained his prescription. Even that would not apply since he was 50 years old.

Plaintiffs raise for the first time in their respondents' brief the assertion that defendant had a duty to include a broader suicide warning based on language in an FDA bulletin issued in October 2004. But nothing in the language plaintiffs quote from that bulletin or the complete language in it mandates the warning plaintiffs suggest. Further, the monograph did contain suicide warnings in several places. And some of them are not limited to children and adolescents. For example, early in the document there is a warning that states: "studies have shown that a small number of people (especially children/teenagers) who take antidepressants for any condition may experience worsening depression, other mental/mood symptoms, or suicidal thoughts/attempts."

Plaintiffs' criticism that suicide warnings were buried in fine print does not equate to negligence on defendant's part. Plaintiffs have not shown defendant had a duty to present the information in the monograph in any particular format or order. A declaration in support of defendant's motion states that the monograph is not government regulated.

And again, the monograph was not a substitute for the patient medication guide. That Costco failed to include that guide or the package insert or that plaintiffs overlooked them does not impose any duty on defendant to change the style, format, or contents of its monograph. As defendant points out, plaintiffs have not presented any evidence the monograph contained any information that was false.

Plaintiffs also failed to show negligence based on allegations in the complaint that the statements a patient should talk to a pharmacist or physician before taking the drug were vague and uncertain. In her declaration Evelyn Rivera states the monograph contained 17 references to calling a doctor, some of them implying Mr. Rivera had never consulted a doctor about his condition. In his declaration O'Donnell concurs this would be confusing. It is unclear the point plaintiffs are attempting to make here. They have not demonstrated any link between this confusion and Mr. Rivera's suicide. And it does not show negligence by defendant.

As to the breach of contract cause of action, based on the same allegedly flawed monograph, defendant argues it is insufficient because it never had a contract with Costco, while plaintiffs, perhaps conceding there was no written agreement, rely on an oral contract. We need not determine whether plaintiffs presented sufficient evidence of the existence of a contract. They failed to substantiate their allegations that defendant owed them any duty vis-à-vis the monograph, which disposes of both causes of action.

## DISPOSITION

The request for judicial notice is denied. The order denying the special motion to strike the third amended complaint's causes of action against appellant is reversed. The case is remanded for the court to enter an order granting appellant's motion under Code of Civil Procedure section 425.16. Appellant is entitled to costs on appeal.

Bedsworth, J., and Ikola, J., concurred.

A petition for a rehearing was denied September 15, 2010.