[No. H017364. Sixth Dist. Oct. 27, 1998.]

LUPE CABESUELA, Plaintiff and Appellant, v.
BROWNING-FERRIS INDUSTRIES OF CALIFORNIA, INC., et al.,
Defendants and Respondents.

104

## COUNSEL

Mesirow, Fink, Rosenblatt & Dawson and Steven M. Fink for Plaintiff and Appellant.

Seyfarth, Shaw, Fairweather & Geraldson, Robert L. Ford, Sue J. Stott and Amy R. Gustafson for Defendants and Respondents.

## OPINION

**MIHARA, J.**—After the demurrer of defendants Browning-Ferris Industries of California, Inc. (Browning-Ferris) and Lynne Ashcraft (Ashcraft) to plaintiff Lupe Cabesuela's first amended complaint was sustained, plaintiff's action against defendants was dismissed. Plaintiff appeals from the ensuing judgment on the grounds that the court erred in sustaining defendants' demurrer. For the reasons stated below, we reverse the judgment.

### PROCEDURAL BACKGROUND

On March 26, 1996, plaintiff filed a complaint alleging 1) wrongful termination in violation of public policy, 2) wrongful termination in violation of Labor Code sections 1101, subdivision (b), 1102, 1102.5, subdivisions (a) and (b), 6310, subdivisions (a)(1), (2) and (b),[1] 3) fraud and deceit, 4) interference with civil rights, 5) defamation, and 6) intentional infliction of emotional distress. The trial court sustained defendants' demurrer to the complaint with leave to amend all causes of action except the second. The second cause of action was sustained without leave to amend.

Plaintiff's first amended complaint alleges that plaintiff, a convicted felon who was on parole at all pertinent times, was employed as a truck driver by Browning-Ferris from about May 23, 1995, to November 8, 1995. Ashcraft

---

[1]All further statutory references are to the Labor Code unless otherwise indicated.

was the district manager at the Browning-Ferris facility where plaintiff worked.

Sometime prior to November 3, 1995, a Browning-Ferris employee killed another Browning-Ferris employee, then committed suicide. As a result of this incident, tension among Browning-Ferris employees ran high.

On or about November 2, 1995, Ashcraft called a meeting to discuss safety and health issues. One of the issues plaintiff raised at the meeting was the drivers' extended working hours of more than 12 hours per day and more than 60 hours per week, which plaintiff believed posed a health and safety hazard.

During the course of the meeting, Steven Porter, a Browning-Ferris employee, asked the employees to "trust" him or the company. In response, plaintiff stated, "Trust you? Over trust we just had a killing." Ashcraft informed plaintiff that the homicide-suicide had nothing to do with the meeting, to which plaintiff responded that the employees were being pushed too hard.

On the same day, Ashcraft told plaintiff that she took plaintiff's words at the meeting to be a threat of physical violence against her.[2] Plaintiff denied making a threat and stated that Ashcraft had not allowed him to finish what he was saying. Ashcraft then suspended plaintiff. Plaintiff was subsequently informed by a Browning-Ferris employee that he had been suspended because Ashcraft wanted to make an example of plaintiff to other employees. The following week, plaintiff's employment was terminated for violence or threats of violence.

Browning-Ferris managers subsequently contacted the San Jose Police Department and accused plaintiff of having threatened Ashcraft with physical violence. Plaintiff's parole officer was contacted, but no further action was taken against him.

Based on these allegations, plaintiff's first amended complaint purports to allege causes of action for 1) wrongful termination in violation of public policy, 2) wrongful termination in violation of the statutory provisions in section 6310, subdivisions (a)(1), (2) and (b), 3) interference with civil rights in violation of Civil Code section 52.1, subdivision (a), 4) defamation, and 5) intentional infliction of emotional distress.

---

[2]Although the complaint contains no such allegation, defendants claim the murder-suicide involved the workplace murder of a supervisor by an employee whom she supervised.

After defendants demurred, the trial court struck the second cause of action of plaintiff's amended complaint on the grounds that the demurrer to that claim as pleaded in the original complaint was sustained without leave to amend. The court sustained the demurrer to the remaining causes of action with leave to amend. When plaintiff failed to amend the complaint, defendants sought and obtained a judgment dismissing the action. This appeal followed.

## DISCUSSION

### Standard of Review

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . . We also consider matters which may be judicially noticed.' . . . Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. . . . When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. . . . And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. . . . The burden of proving such reasonable possibility is squarely on the plaintiff. . . ." (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58], citations omitted.)

### First and Second Causes of Action

Prior to considering plaintiff's numerous arguments, we reiterate that the starting point for all employment cases is the presumption of at-will employment. Section 2922 provides that "[a]n employment, having no specified term, may be terminated at the will of either party on notice to the other." The tort of wrongful termination in violation of public policy is an exception to the statute. (*Jennings* v. *Marralle* (1994) 8 Cal.4th 121, 129 [32 Cal.Rptr.2d 275, 876 P.2d 1074].)

"It is settled that an employer's discharge of an employee in violation of a fundamental public policy embodied in a constitutional or statutory provision gives rise to a tort action. . . . An employer who fires an employee in retaliation for protesting unsafe working conditions violates fundamental public policy, and the discharged employee may bring a tort action for wrongful discharge in addition to his or her statutory remedies. . . ."

(*Barton* v. *New United Motor Manufacturing., Inc.* (1996) 43 Cal.App.4th 1200, 1205 [51 Cal.Rptr.2d 328], citations omitted.)

The first cause of action of plaintiff's amended complaint alleges that Browning-Ferris's announced reasons for terminating plaintiff were pretextual. The true reasons the company terminated plaintiff included the fact that he had exercised his right under Cal-OSHA (California Occupational Safety and Health Administration) to discuss the homicide-suicide as affecting the health and safety of plaintiff and other employees, and had complained of the long hours which the drivers were required to work, which plaintiff believed to be a health and safety hazard. Plaintiff alleged his termination had resulted in a myriad of statutory violations.[3] Essentially, the statutory violations can be divided into three categories: 1) health and safety statutes, 2) constitutional provisions protecting free speech, and 3) section 1101, subdivision (b), which protects the political activities or affiliations of employees. We find that plaintiff has stated causes of action based for the violation of section 6310.

As defendants acknowledge, section 6310, subdivision (a)(1)[4] prohibits an employer from discharging an employee for making a health and safety complaint. Section 6310, subdivision (b)[5] provides remedies for an employee who is discharged for making a bona fide oral or written complaint of unsafe working conditions.

Contrary to defendants' claims, the first cause of action of plaintiff's amended complaint alleges, inter alia, that Browning-Ferris "terminated

[3]Paragraph 51 of the amended complaint alleges on information and belief that "the pretextual termination of PLAINTIFF violated the provisions of, and/or the public policy against such retaliation and discrimination expressed in, among other things, the First Amendment to the United States Constitution, Article 1, § 10 of the California Constitution, Labor Code §§ 1101(b), 6310(a)(1), 63[10] (a)(2), 6310(a)(3), 6310(b), 6311, 6400, 6401, 6401.7(a)(5), 6401.7(b), 6403(b), 6403(c), 6404, 6406(a) and Code of Civil Procedure § 527.8(k) . . . ."

[4]Section 6310, subdivision (a) provides in relevant part: "No person shall discharge or in any manner discriminate against any employee because the employee has done any of the following: [¶] (1) Made any oral or written complaint to . . . his or her employer, . . ."

[5]Section 6310, subdivision (b) provides: "(b) Any employee who is discharged, threatened with discharge, demoted, suspended, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because the employee has made a bona fide oral or written complaint to . . . his or her employer . . . of unsafe working conditions, or work practices, in his or her employment or place of employment . . . shall be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer. Any employer who willfully refuses to rehire, promote, or otherwise restore an employee or former employee who has been determined to be eligible for rehiring or promotion by a grievance procedure, arbitration, or hearing authorized by law, is guilty of a misdemeanor."

PLAINTIFF because he had complained of the long hours which the [Browning-Ferris] drivers were required to work and which PLAINTIFF reasonably believed to be a health and safety hazard." The second cause of action alleges that plaintiff's employment "was terminated by [Browning-Ferris] for making a bona fide complaint to [Browning-Ferris] about the working conditions and/or work practices of [Browning-Ferris] in violation of Labor Code § 6310(a)(1) and 6310(b)." We find these allegations sufficient to withstand a demurrer to these causes of action.

Citing *Muller* v. *Automobile Club of So. California* (1998) 61 Cal.App.4th 431, 452 [71 Cal.Rptr.2d 573], defendants assert plaintiff's causes of action based on section 6310 must fail because an essential element of a section 6310 violation is that the workplace must actually be unsafe. We first note that the *Muller* court cites no authority for this assertion. ■ It appears to contradict Justice Grodin's pronouncement that ". . . an employee is protected against discharge or discrimination for complaining *in good faith* about working conditions or practices which he reasonably believes to be unsafe, whether or not there exists at the time of the complaint an OSHA standard or order which is being violated." (*Hentzel* v. *Singer Co.* (1982) 138 Cal.App.3d 290, 299-300 [188 Cal.Rptr. 159, 35 A.L.R.4th 1015], italics added, fn. omitted.) We agree that an employee must be protected against discharge for a good faith complaint about working conditions which he believes to be unsafe.

We also reject defendants' claim that plaintiff holds no direct right of action under section 6310. Defendants assert that the sole manner to enforce section 6310 is through a proceeding before the Labor Commissioner pursuant to section 6312.[6]

■ When a new right, not existing at common law, is created by statute, that statutory remedy is exclusive. For rights which already existed at common law before creation of the statutory right, however, the statutory remedy is usually regarded as merely cumulative, permitting the plaintiff to pursue the common law remedy as well. (*Glaser* v. *Meyers* (1982) 137 Cal.App.3d 770, 774 [187 Cal.Rptr. 242].) ■ In *Hentzel* v. *Singer Co.*, *supra*, 138 Cal.App.3d 290, the court was called upon to consider the impact of sections 6310 and 6312 on the plaintiff's common law cause of action for retaliatory dismissal. The court concluded that section 6312 did not constitute the exclusive remedy for an action brought pursuant to section 6310.

---

[6]Section 6312 provides: "Any employee who believes that he or she has been discharged or otherwise discriminated against by any person in violation of Section 6310 or 6311 may file a complaint with the Labor Commissioner pursuant to Section 98.7."

(138 Cal.App.3d at pp. 299-302.) Similar results were reached in *Jenkins* v. *Family Health Program* (1989) 214 Cal.App.3d 440, 449 [262 Cal.Rptr. 798]; and *Daly* v. *Exxon Corp.* (1997) 55 Cal.App.4th 39, 43-44 [63 Cal.Rptr.2d 727].

Having concluded that plaintiff may state a cause of action for wrongful termination based on violation of section 6310, it is unnecessary to address the remaining alleged statutory violation in plaintiff's second cause of action.

*Civil Code section 52.1*

■ The third cause of action of plaintiff's amended complaint alleges that defendants interfered or attempted to interfere with plaintiff's civil rights in violation of Civil Code section 52.1.[7] Plaintiff has failed to allege the requisite facts to demonstrate a claim under this statute.

■ "The Bane Act and related statutes 'are California's response to [the] alarming increase in hate crimes.' . . . Civil Code section 52.1 provides that a person may bring a cause of action 'in his or her own name and on his or her own behalf' against anyone who 'interferes by threats, intimidation or coercion, with the exercise or enjoyment' of any constitutional or statutory right." (*Bay Area Rapid Transit Dist.* v. *Superior Court* (1995) 38 Cal.App.4th 141, 144 [44 Cal.Rptr.2d 887], citation omitted; see also *Jones* v. *Kmart Corp.* (1998) 17 Cal.4th 329, 338 [70 Cal.Rptr.2d 844, 949 P.2d 941].) ■ Two essential allegations are missing in plaintiff's amended complaint under this statute.

---

[7]Civil Code section 52.1 provides in relevant part as follows: "(a) Whenever a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General, or any district attorney or city attorney may bring a civil action for injunctive and other appropriate equitable relief in the name of the people of the State of California, in order to protect the peaceable exercise or enjoyment of the right or rights secured. [¶] (b) Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured. [¶] . . . [¶] (j) Speech alone shall not be sufficient to support an action under subdivision (a) or (b), except upon a showing that the speech itself threatens violence against a specific person or group of persons; and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence had the apparent ability to carry out the threat."

In *Boccato* v. *City of Hermosa Beach* (1994) 29 Cal.App.4th 1797, 1809 [35 Cal.Rptr.2d 282], the court held that Civil Code section 52.1 must be read in conjunction with Civil Code section 51.7. That statute provides that "[a]ll persons within the jurisdiction of this state have the right to be free from violence, or intimidation by threat of violence, committed against their persons or property because of their race, color, religion, ancestry, national origin, political affiliation, sex, sexual orientation, age, disability, or position in a labor dispute." From the foregoing, it is clear that to state a cause of action under section 52.1 there must first be violence or intimidation by threat of violence. Second, the violence or threatened violence must be due to plaintiff's membership in one of the specified classifications set forth in Civil Code section 51.7 or a group similarly protected by constitution or statute from hate crimes.

The allegations of plaintiff's third cause of action state that Browning-Ferris interfered with plaintiff's rights by "(i) suspending him; (ii) threatening to terminate his employment; (iii) terminating his employment; (iv) falsely communicating to other employees of [Browning-Ferris] that PLAINTIFF had threatened Ms. ASHCRAFT with violence; (v) falsely informing others, whose identities are unknown at this time, that PLAINTIFF had threatened Ms. ASHCRAFT with physical violence; (vi) attempting to have PLAINTIFF's parole revoked; (vii) implicitly threatening PLAINTIFF with police action, which implied the threat of physical force and government authority perpetrated against the PLAINTIFF directly, particularly because the PLAINTIFF would be, or might be, be viewed by the authorities as a dangerous parolee, who had violated his parole by threatening physical violence. . . . [¶] . . . [S]uch interference or attempted interference by DEFENDANTS was practiced upon him because of his position in a labor dispute regarding health and safety issues."

These allegations only imply that plaintiff might be subjected to violence by the police. They in no way show actual violence or intimidation by the threat of violence. Moreover, plaintiff does not, and cannot show, he is a member of a class which is protected from hate crimes under the Bane Act (Civ. Code, § 52.1).

*Defamation*

█ Plaintiff's fourth cause of action alleges that defendants orally and in writing falsely accused plaintiff of threatening physical violence against Ashcraft. The allegations fail to state a claim for several reasons. The most obvious reason will suffice.

It is axiomatic that for defamatory matter to be actionable, it must be communicated, or "published," intentionally or negligently, to "one other than the person defamed." (Prosser & Keeton on Torts (5th ed. 1984) § 113, pp. 797-798.) The fact that defendants orally and in writing accused plaintiff of threatening violence, without more, does not constitute "publication" for the purposes of Civil Code sections 46 and 45.[8]

We assume that plaintiff's claim for defamation is based in part on defendants' communication with the San Jose police, since the preliminary allegations of the complaint were incorporated by reference into the fourth cause of action. However, Civil Code section 47 gives all persons the right to report crimes to the police, the local prosecutor or an appropriate regulatory agency, even if the report is made in bad faith. (*Fremont Comp. Ins. Co. v. Superior Court* (1996) 44 Cal.App.4th 867, 875 [52 Cal.Rptr.2d 211]; *Cote* v. *Henderson* (1990) 218 Cal.App.3d 796, 806 [267 Cal.Rptr. 274] [the defendant was "absolutely privileged" to report rape to police and district attorney]; *Williams* v. *Taylor* (1982) 129 Cal.App.3d 745, 753-754 [181 Cal.Rptr. 423] [owner of auto shop "absolutely privileged" to tell police department of former manager's wrongdoing].)

*Intentional Infliction of Emotional Distress*

█ In their demurrer to the fifth cause of action defendants took the position that plaintiff's claim for injury arising out of his termination was barred by the exclusive remedy provisions of the Workers' Compensation Act (§ 3200 et seq.), since termination is a normal and inherent part of employment. (See *Shoemaker* v. *Myers* (1990) 52 Cal.3d 1, 18 [276 Cal.Rptr. 303, 801 P.2d 1054, 20 A.L.R.5th 1016].) The demurrer was apparently sustained on this theory. In light of our conclusion that plaintiff has stated a cause of action for wrongful termination in violation of public policy, we hold that plaintiff has also stated a cause of action for intentional infliction of emotional distress.

In *Gantt* v. *Sentry Insurance* (1992) 1 Cal.4th 1083, 1100 [4 Cal.Rptr.2d 874, 824 P.2d 680] (overruled on another point in *Green* v. *Ralee Engineering Co.* (1998) 19 Cal.4th 66, 80, fn. 6 [78 Cal.Rptr.2d 16, 960 P.2d 1046]), the high court clarified its earlier decisions by holding that when an employer's decision to discharge an employee results from an animus that violates

---

[8]The fourth cause of action alleges defendants' statements were slanderous per se pursuant to Civil Code section 46. In relevant part that statute reads: "Slander is a false and unprivileged publication, orally uttered, and also communications by radio or any mechanical or other means which: [¶] 1. Charges any person with crime, or with having been indicted, convicted, or punished for crime." Civil Code section 45 states in part: "Libel is a false and unprivileged publication by writing, . . . ."

the fundamental policy, such misconduct cannot be considered a normal part of the employment relationship. Thus, where, as here, a plaintiff's emotional distress claim is premised upon his employer's violation of a fundamental public policy of this state, such misconduct lies outside of the exclusive remedy provisions of the Labor Code. (*Leibert* v. *Transworld Systems, Inc.* (1995) 32 Cal.App.4th 1693, 1706-1707 [39 Cal.Rptr.2d 65]; *Accardi* v. *Superior Court* (1993) 17 Cal.App.4th 341, 352-353 [21 Cal.Rptr.2d 292].)

In conclusion, we find that the trial court improperly sustained defendants' demurrer to the first, second, and fifth causes of action of plaintiff's amended complaint.

## DISPOSITION

The judgment is reversed and the action remanded for further proceedings. Costs are awarded to appellant.

Cottle, P. J., and Bamattre-Manoukian, J., concurred.